UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JPMORGAN CHASE BANK, N.A.,

                Plaintiff,

-against-                                        14-CV-6851 (RMB)

MARK L. FREYBERG, individually and          **AFFIDAVIT**
conducting business under the name of
THE FREYBERG LAW GROUP,

                Defendant.
-----------------------------------------------------------------x

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

        MARK L. FREYBERG, being duly sworn, deposes and says:

        1.     I am the defendant in the above-referenced action and am an attorney admitted to practice in the State of New York since 1982. I make this affidavit in opposition to Plaintiff's motion for summary judgment and in support of my cross-motion for summary judgment.

        2.     During March 2014, I was contacted by a person identifying herself as the Chief Financial Officer of Diamyd Medical AB, a Swedish company, and seeking to retain me to represent it in a commercial dispute with an entity identified as "Praxair."

        3.     I performed a Google search of Diamyd Medical AB, reviewed its website, reviewed documents provided to me by e-mail and undertook Internet research to confirm certain information provided to me, including the existence of Praxair.

        4.     After exchanging preliminary e-mails, I forwarded a proposed retainer letter to the new client who executed and returned the same.

5. I received an e-mail from the new client purportedly addressed to Praxair, which indicated that it had retained me. Shortly thereafter, I received a copy of an e-mail purportedly from Praxair agreeing to settle the claim by making two payments, with the first to be made by a cashier's check of $433,567.60.

6. On March 11, 2014, I received what appeared to be a bank check (the "Check") purportedly from Praxair drawn by its bank, Canadian Imperial Bank of Commerce ("CIBC"), on an account at the Bank of New York ("BNY").

7. I deposited the check at JP Morgan Chase Bank ("Chase") on that day, and was provided a Transaction Summary which indicated that the proceeds of the Check would not be available until March 20 and that:

> Checks within this deposit may not be paid because of information we've received from the paying bank or due to information we have within our own systems.

8. This is the only Transaction Summary which I received from Chase in connection with the deposit of the Check.

9. On March 12, I called Chase to inquire as to the reasons for the delay.

10. Chase did not provide this information but instead, on March 13, a Chase representative informed me that the concerns expressed on the Transaction Summary had been addressed to Chase's satisfaction and the funds could be wired from my account.

11. Accordingly, early that evening I went to a Chase branch in Manhattan and met with Chase's representative, Angel Miranda ("Miranda"), who arranged to initiate a wire transfer of a portion of the Check proceeds.

12. Approximately one hour later, I received a voicemail message from Miranda indicating that Chase's wire department had determined that the wire could not be sent for

ten business days absent "proof" that the Check was "good." He also indicated that Chase had undertaken to obtain this proof by contacting BNY. A transcript of the voicemail is attached to the Affidavit of David Neufeld sworn to June 29, 2015 as Exhibit "E." I understood the term "good" to mean that Chase would confirm that the Check was what it purported to be.

13. On the morning of March 14, I visited Chase's Chappaqua branch, near my home, to inquire about the status of the transaction and Miranda's voicemail, and met with Chase Relationship Banker Joseph Szygiel ("Szygiel").

14. I gave Miranda's business card to Szygiel and explained to Szygiel that Miranda had informed me that the wire had been held pending confirmation that the Check was good. I further explained to Szygiel that I had never met my new client and had been retained over the internet. I requested information concerning the status of the Check and wire, and informed Szygiel, in sum and substance, that I wanted to be sure the funds had been properly collected before the wire was processed.

15. Szygiel then telephoned people whom I understood were others at Chase. He remained on the telephone for approximately forty minutes, much of which time he appeared to be on hold. We made casual conversation while he was on hold.

16. When Szygiel hung up the phone, he gave me a "thumbs up" sign and informed me that Chase's concerns had been satisfied, the funds were in my account and the wire would be sent.

17. Based upon the message I received from Miranda indicating that wire would not be processed until Chase confirmed the Check was good, I understood Szygiel to mean that Chase had obtained the necessary confirmation.

18. I relied upon this information from Szygiel in allowing Chase to wire the funds on March 14.

19. No one from Chase ever informed me that its computer system had identified the transaction as involving a likely fraud. Chase also never informed me that the transaction had been reviewed by a Fraud Analyst who had concurred with the computer system's determination that the transaction was likely fraudulent and had designated the transaction as "high risk."

20. Chase also never informed me that it had prior experience with "Praxair" checks being utilized in attempts to scam its customers.

21. If I had been informed of this information, I certainly would have sought to prevent the funds from being transferred on March 14.

22. Instead, I was misled by Miranda, who indicated in his message that Chase had imposed a hold on the wire because it was concerned that the Check had only been deposited the day before the wire was initiated.

23. No one from Chase ever informed me that BNY had indicated to Chase on March 14 that BNY could not confirm if the Check had been paid, nor that any risks remained with regard to the wire. If I had been informed of this, I certainly would have sought to prevent the funds from being transferred until final payment on the Check had been received.

24. By its conduct, the communications of its representatives and its allowing the wire to be effectuated after it had placed a protective hold, Chase gave me every indication that its concerns had been addressed and the Funds could be safely transferred.

4

25. I relied on these representations in allowing the wire to be sent and I would not have done so but for Chase's representations.

_____
MARK L. FREYBERG

Sworn to before me this
29th day of June, 2015

_____
Notary Public

WILLIAM J. DOBIE
Notary Public, State of New York
No. 02DO6263967
Qualified in Kings County
Commission Expires June 25, 20_16_