Barry J. Glickman, Esq.
bglickman@zeklaw.com
Bruce S. Goodman, Esq.
bgoodman@zeklaw.com
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400 (telephone)
(212) 753-0396 (facsimile)

Attorneys for Plaintiff
  JPMorgan Chase Bank, N.A.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A.,<br><br>                              Plaintiff,<br><br>  - against -<br><br>MARK L. FREYBERG, individually and conducting business under the name of THE FREYBERG LAW GROUP,<br><br>                              Defendant. | Case No.: 14-CV-6851 (RMB) (SN) |

**REPLY MEMORANDUM OF LAW OF PLAINTIFF JPMORGAN
CHASE BANK, N.A IN FURTHER SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 223-0400

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

DEFENDANT FAILS TO REFUTE CHASE'S LEGAL ARGUMENTS IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ........................................... 1

    Chase Did Not Conceal Material Information From Defendant ........................... 2

    As a Matter of Law Chase Had No Duty To Inform Defendant If It Suspected
    a Fraud ................................................................................................................... 3

    Defendant Does Not and Cannot Identify Any Misrepresentations By Chase ..... 5

    As A Matter of Law Defendant's Defense and Counterclaims Should Be
    Dismissed .............................................................................................................. 5

    Equitable Estoppel ................................................................................................ 5

    Negligent Misrepresentation ................................................................................. 6

    Fraudulent Misrepresentation ............................................................................... 7

    Expedited Funds Availability Act ......................................................................... 7

    UCC Bad Faith Claim .......................................................................................... 8

    The Magistrate Judge Previously and Correctly Addressed All Discovery
    Disputes and Chase Did Not Intentionally Destroy Evidence .............................. 8

    Chase Is Entitled To Statutory Pre Judgment Interest of 9% Pursuant to
    CPLR § 5004 ...................................................................................................... 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Bruce Supply Corp. v. D & M Plumbing & Heating Corp.,
    737 N.Y.S.2d 642 (2d Dept. 2002) .................................................................................. 10

Bruchman v. Standard Chartered Bank PLC,
    997 F. Supp 481 (S.D.N.Y. 1998) ...................................................................................... 7

Denkewalter & Associates, Ltd. v. Cole Taylor Bank,
    2011 U.S. Dist. LEXIS 82344 (N.D. Ill. 2011) .............................................................. 6, 7

EEOC v. JP Morgan Chase Bank, N.A.,
    295 F.R.D. 166 (S.D. Ohio 2013) ...................................................................................... 9

Fischer & Mandell LLP v. Citibank, N.A.,
    632 F.3d 793 (2d Cir. 2011) ...................................................................................... 1, 4, 7

Fischer & Mandell LLP v. Citibank, N.A.,
    2009 U.S. Dist. LEXIS 54184 (S.D.N.Y. 2009) ................................................................ 7

Gomez-Jimenez v. New York Law School,
    956 N.Y.S.2d 54 (1st Dept. 2012) ...................................................................................... 7

Greenberg, Trager & Herbst, LLP v. HSBC Bank USA,
    17 N.Y.3d 565 (2011) ................................................................................................ passim

Kosakow v. New Rochelle Radiology Assocs., P.C.,
    274 F.3d 706 (2d Cir 2001) ................................................................................................ 6

Northpark Nat'l Bank v. Bankers Trust Co.,
    572 F. Supp 524 (S.D.N.Y. 1983) ...................................................................................... 8

Sharp Int'l Corp. v. State Street Bank & Trust Co.,
    302 B.R. 760 (E.D.N.Y. 2003) ...................................................................................... 3, 4

Silverman Partners, L.P. v. First Bank,
    687 F. Supp.2d 269 (E.D.N.Y. 2010) ................................................................................ 4

Vella v. Equitable Life Assur. Soc.,
    887 F.2d 388 (2d Cir. 1989) ............................................................................................... 5

**OTHER AUTHORITIES**

12 C.F.R. § 229.13(e)(1) ............................................................................................................. 7

12 C.F.R. § 229.13 (h)(1) ............................................................................................................ 7

## PRELIMINARY STATEMENT

In its main brief Chase provides a comprehensive recitation of the relevant legal authority supporting its entitlement to summary judgment on its complaint, and dismissal of defendant's defense and counterclaims. Defendant now submits opposition and a cross-motion for summary judgment failing to set forth any compelling reason warranting denial of Chase's motion, or an award of summary judgment in defendant's favor. Rather, armed with no more than the desperation of a summary judgment motion opponent who cannot find any even remotely controlling legal authority, defendant can only draw what he desperately suggests are factual distinctions between this case and those facts upon which the New York Court of Appeals decided Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565 (2011), and the United States Court of Appeals decided Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793 (2d Cir. 2011). These supposed distinctions are illusory and meaningless. Indeed, defendant's effort to dispose of Greenberg, Trager and Fischer & Mandell as "inapplicable" rests upon the fundamentally flawed and unsupportable misstatement that Chase knew about a fraud involving Praxair before defendant sent the Fraudster EFT. Such a remarkably false misrepresentation highlights that defendant's strategy is simply to confuse and dissemble. All controlling authority supports Chase's position. As a matter of law, therefore, Chase is thus entitled to summary judgment in its entirety.

## DEFENDANT FAILS TO REFUTE CHASE'S LEGAL ARGUMENTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

As set forth in its main brief, the law in both New York State and the Second Circuit is that that a depositary bank owes no duty to a depositor-attorney to ascertain that a deposited check is counterfeit. Rather, it is clear that as a matter of law the attorney is in the best position to prevent the fraud by knowing his client. See Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793 (2d Cir. 2011), and Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565

(2011). Defendant's opposition does not and cannot dispute this unassailable legal authority; he simply fails to cite any authority shifting the risk of loss for a counterfeit check from the depositor to the bank prior to the bank receiving final settlement for the check from the drawee bank. Here, it is undisputed Chase never received final settlement of the Counterfeit Check. Rather, it was timely returned unpaid by BNY. Thus, the risk of loss remained with defendant, and Chase is entitled to an award of summary judgment. See Greenberg, Trager, 17 N.Y.3d at 582 ("The UCC is clear that, until there is final settlement of the check, the risk of loss lies with the depositor.")

Defendant litters his opposition with a litany of arguments designed to divert this Court's attention from the dispositive case law. None, discussed *seriatim* below, provides a basis to defeat Chase's motion.

**Chase Did Not Conceal Material Information From Defendant**

Defendant boldly declares that Chase "determined that the transaction involved a likely fraud" and incorrectly distorts the truth by alleging Chase knew about a fraud involving "Praxair," which it concealed from him before he sent the Fraudster EFT.[1] Chase did not delay the Fraudster EFT based on such alleged information because it had no such information. Because defendant's incredible claim is untrue it is not surprising that, notwithstanding four depositions of Chase witnesses, and Chase's production of documents, he makes it without any attribution or evidentiary support. Such an incendiary allegation is belied by an abundance of evidence demonstrating that Chase fraud analyst Ethan Merrick predicated his decision to delay the Fraudster EFT on several "red flags" that were inconsistent with defendant's transaction history in the Account.[2] (Glickman Decl., **Ex. 25** (Merrick Dep. 55:19-22); Supp. Glickman Declaration, **Ex. 31**

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed in Chase's Memorandum of Law in Support of Its Motion for Summary Judgment, dated May 27 2015.

[2] As a matter of law, even if Chase had information about a fraud involving "Praxair" it had no duty to disclose that information to defendant. See page 3, infra.

2

(Merrick Dep. 44:12-17); Declaration of Ethan Merrick, ¶ 4, 7). Mr. Merrick observed, *inter alia*: (i) the Counterfeit Check was for an usually large amount and was issued by a foreign bank, (ii) the Fraudster EFT involved a Swedish medical company, (iii) defendant had never previously sent an EFT from the Account, (iv) defendant intended to wire most of the funds to an account at a Japanese bank, and (v) defendant did not initiate the wire from his home branch in Chappaqua, New York, but from a branch in Manhattan, all of which is undisputed. (Merrick Decl., ¶ 7; Supp. Glickman Declaration, **Ex. 31** (Merrick Dep. 58:1-67:25)).

In attempting to manufacture an issue of fact where none exists, defendant paints a picture of an alternate reality he knows to be pure fiction. The simple truth is that defendant conducted no real due diligence investigating his "client," and seeks to pin his failings on Chase. The simplest inquiry by defendant would have revealed, and prevented the fraud.

**As a Matter of Law Chase Had No Duty To Inform Defendant If It Suspected a Fraud**

A bank has no duty as a matter of law to inform a customer of suspected fraud. In Sharp Int'l Corp. v. State Street Bank & Trust Co., 302 B.R. 760 (E.D.N.Y. 2003), a bank extended a multi-million dollar line of credit to plaintiff company. The bank later discovered "clear evidence of fraud" following an internal investigation of plaintiff's account--plaintiff's majority shareholders were artificially inflating the company's sales and looting company assets. The bank did not disclose its findings to the company's other shareholders. Instead, the bank arranged for the company to repay most of its debt.

Plaintiff claimed the bank aided and abetted the fraud, and placed its interests ahead of the shareholders' interests, by failing to disclose its knowledge of the fraud to the shareholders. The court rejected plaintiff's argument because "[the bank] owed [plaintiff] no duty of loyalty, and had no obligation to put [plaintiff's] interests ahead of its own." Although the court found the bank

3

may possibly have stopped the fraud by disclosing what it knew to the shareholders, it had no "duty to disclose its knowledge of the [] fraud…" Id. at 776.

In Silverman Partners, L.P. v. First Bank, 687 F. Supp.2d 269 (E.D.N.Y. 2010), the bank extended a line of credit to joint borrowers, plaintiff and Roberts. Both were entitled to draw the line, and jointly liable for the debt. The bank permitted Roberts to draw the line notwithstanding "red flags" that should have alerted the bank he was committing a "massive fraud." Plaintiff asserted the bank breached a duty by failing to detect Roberts' fraud and inform plaintiff of it. The court rejected plaintiff's claim, finding "no such duty exists." "The plaintiffs ultimately present no law that establishes a bank's duty to a customer to investigate the good faith representations of his or her business partner, or to track a co-borrower's transactions to prevent fraud." Id. at 282.

Significantly, Sharp Int'l and Silverman Partners are consistent with Greenberg, Trager, and Fischer & Mandell; the attorney, not the bank, is in the best position to prevent a fraud by knowing his client. Like the banks in Sharp Int'l and Silverman Partners, Chase, as thoroughly detailed in its main brief, had no duty to investigate defendant's "client" or to protect defendant from being defrauded by such "client." (See, Chase Memorandum, Point III).

Not surprisingly, defendant fails to cite any authority imposing a duty on a bank to disclose a suspected fraud to its customer, because no duty exists. Thus, as a matter of law, even if Chase had information concerning a fraud involving "Praxair" before defendant instructed Chase to send the Fraudster EFT, it would have had no duty to disclose that information to defendant. Ironically, Chase's motivation was to avoid being in precisely the position in which it is in now -- suing its customer for reimbursement of an overdraft. But for defendant's haste in sending the

Fraudster EFT, BNY would have returned the Counterfeit Check unpaid and the Account would not have been overdrawn, thereby resulting in Chase's unreimbursed loss.

**Defendant Does Not and Cannot Identify Any Misrepresentations By Chase**

Defendant premises his opposition with an assortment of representations he claims Chase made, for which he does not and cannot suggest that any is false. Thus, as a matter of law none is a misrepresentation. See Vella v. Equitable Life Assur. Soc., 887 F.2d 388, 391 (2d Cir. 1989). In fact, it is beyond dispute that defendant does not and cannot identify a single discrete purported misrepresentation on Chase's part concerning the Counterfeit Check. Rather, he conflates the notion of a "misrepresentation" with his subjective "understanding" based upon the "sum and substance" of what Chase personnel allegedly told him. Such a cavalier recitation distorts the true facts advanced by Chase, and as demonstrated by competent evidence, in admissible form, that is before this Court. For example, defendant admits that his decision to send the Fraudster EFT was based solely on his subjective "understandings" concerning the Counterfeit Check, not on anything Chase actually told him. (Freyberg Aff., ¶ 12, 17). Most important, defendant does not and cannot allege that Chase told him it received *final payment or settlement* for the Counterfeit Check. To the contrary, he concedes, as he must, that Chase did not make any such representation, thereby dooming his position.

**As A Matter of Law Defendant's Defense and Counterclaims Should Be Dismissed**

As detailed in greater length in Chase's main brief, defendant's defense and counterclaims all fail as a matter of law. (See, Chase Memorandum, Point II). Defendant fails to raise any genuine issues of fact in opposition precluding dismissal of the defense or counterclaims.

**Equitable Estoppel**

First, following a thorough analysis of the UCC's risk allocation rules in Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565, 575-77 (2011), the New York Court of

5

Appeals rejected an equitable estoppel defense as "unavailing" because a lawyer is in the best position to prevent the fraud by knowing his client, which defendant admittedly failed to do. Id. at 581. Next, defendant grounds his equitable estoppel defense on the fundamentally flawed premise that Chase knew of a fraud involving Praxair, and misrepresented it to him. As detailed above, this is simply a red herring: (i) Chase had no knowledge of a fraud involving Praxair before defendant sent the Fraudster EFT, and (ii) made no misrepresentations to him about the Counterfeit Check. Defendant's reliance on Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706 (2d Cir 2001), is misplaced because it is inapposite to the circumstances presented here. Unlike the claim in Kosakow involving the Family Medical Leave Act, here the Uniform Commercial Code has clear and specific rules for allocating loss attendant to a counterfeit check.

### Negligent Misrepresentation

Consistent with well-established New York law, Greenberg, Trager definitively held that a bank and its customer are in a borrower-lender relationship, and a bank owes no special duty to its customer. See Greenberg, Trager, 17 N.Y.3d at 578-79. Willfully ignoring this proclamation, defendant premises his claim for negligent misrepresentation upon the facially preposterous allegation that he and Chase are in a "special relationship," and therefore Chase owes him a "special duty." Therefore, defendant's claim for negligent misrepresentation fails as a matter of law.

Defendant's reliance on dicta in Denkewalter & Associates, Ltd. v. Cole Taylor Bank, 2011 U.S. Dist. LEXIS 82344 (N.D. Ill. 2011), highlights the abject frivolity of his opposition as a whole. There, the Court dismissed a complaint and refused to exercise supplemental jurisdiction over plaintiff's Illinois state law negligent misrepresentation claim, without adjudicating the merits. Other authority on which plaintiff relies is equally inapposite because none of it stands for the proposition that a bank may be held liable for negligent misrepresentation in the

circumstances presented here, which, instead, are directly controlled by Greenberg, Trager and Fischer & Mandell.

### Fraudulent Misrepresentation

Defendant's reliance on Gomez-Jimenez v. New York Law School, 956 N.Y.S.2d 54 (1st Dept. 2012), is similarly misplaced. In fact, Gomez-Jimenez is not at odds with Greenberg, Trager and Fischer & Mandell because it correctly explains that a fraudulent concealment claim must be predicated on a defendant's "duty to disclose material information." Id. at 59. As discussed above, Chase had no such legal duty. See also Bruchman v. Standard Chartered Bank PLC, 997 F. Supp 481, 489 (S.D.N.Y. 1998) ("To prove fraudulent concealment, a plaintiff also must establish that the defendant had a duty to disclose the material information.")

### Expedited Funds Availability Act

In Fischer & Mandell LLP v. Citibank, N.A., 2009 U.S. Dist. LEXIS 54184 (S.D.N.Y. 2009), District Judge Sullivan held without equivocation that the EFAA does not impose liability on a bank for its customer's checks. Rather, a bank customer withdraws money early at her own peril. (See Chase Memorandum, Point II). Indeed, Denkewalter & Assocs., supra, cited by defendant, dismissed an attorney's EFAA claim against a bank where (i) the attorney deposited a client check, (ii) the bank told the attorney it "received" funds represented by the check, and he could send a wire based on those funds. The court held the bank's alleged representations "cannot lead to liability under the EFAA." Denkewalter & Assocs., 2011 U.S. Dist LEXIS 82344, at *12. Moreover, even if a bank has "reasonable cause to believe that a check is uncollectible," the EFAA permits, but does not require, the bank to delay availability of the funds to the depositor. 12 C.F.R. §§ 229.13(e)(1) and (h)(1).

### UCC Bad Faith Claim

Without any authority for such a novel contention, defendant alleges a bank's removal of a hold on a transaction constitutes a bad faith violation of the UCC. Defendant's reliance on Northpark Nat'l Bank v. Bankers Trust Co., 572 F. Supp 524 (S.D.N.Y. 1983), adds nothing. Indeed, in Northpark, the District Court explained "[i]f there is a policy implicit in the UCC's rules for the allocation of losses due to fraud, it surely is that the loss be placed on the party in the best position to prevent it." Id. at 535. This is consistent with Greenberg, Trager, in which the New York Court of Appeals, after addressing the applicability of the UCC, unequivocally declared "[the law firm is] in the best position to guard against the risk of a counterfeit check by knowing its 'client.'" Greenberg, Trager, 17 N.Y.3d at 582.

The UCC mandates that the risk of loss remains with the depositor until the bank receives final settlement for the check. It, thus, cannot be a "bad faith" violation of the UCC for a bank to honor its customer's instructions to send a wire the customer knew to be funded by a provisional credit to his account.

### The Magistrate Judge Previously and Correctly Addressed All Discovery Disputes and Chase Did Not Intentionally Destroy Evidence

Notwithstanding comprehensive discovery, including five depositions and document productions, defendant continues to make baseless claims concerning the alleged insufficiency of discovery as if a mantra. These were addressed dispositively by both this Court and Magistrate Judge Netburn on three separate occasions [See ECF Nos 21 and 43]. Chase submits that such claim is simply a transparent excuse to delay the inevitable award of summary judgment in its favor.

Defendant outrageously claims Chase intentionally destroyed evidence. Defendant's principal complaint is that Chase has not produced copies of audio recordings of four telephone conversations -- two involving Mr. Merrick and another two involving Chase Fraud Analyst

8

Jacqueline Welch -- because they are unavailable pursuant to Chase's retention policy. As a threshold matter, (i) defendant admits he obtained the Welch recordings from BNY, (ii) Chase produced to defendant notes maintained by Mr. Merrick concerning his telephone conversations, and (iii) defendant comprehensively questioned Mr. Merrick at a deposition. Based on this, during a discovery conference conducted on April 29, 2015, Magistrate Judge Netburn concluded defendant suffered no prejudice, and rejected defendant's request that Chase be sanctioned. (Supp. Glickman Decl., **Ex. 32** (T. 34:11-16; 35:24)). Importantly, as set forth above, Chase owed defendant no duty to discover any potential fraud that may have been perpetrated on him by his purported "client," or disclose to him any information it might have about it. Thus, Magistrate Judge Netburn stated conclusively: "I think on prejudice there is just not a basis here to find prejudice given all the discovery that is taking place." (Id. (T. 36:6-13)). Equally significant is that this Court affirmed Magistrate Judge Netburn's decision by Order dated May 18, 2015. [See ECF No. 43].

Defendant's reliance on EEOC v. JP Morgan Chase Bank, N.A., 295 F.R.D. 166 (S.D. Ohio 2013), is misplaced. There the bank was sanctioned because it repeatedly ignored plaintiff's specific requests to safeguard alleged relevant information. Here, the purported "spoliation letter" to which defendant refers sought preservation only of recordings of Ms. Welch's conversations with BNY. Defendant admits he obtained these recordings from BNY, and cites to them in his papers. Defendant, therefore, was not prejudiced because he has had an opportunity for complete discovery.

Accordingly, there is no basis to permit defendant the additional discovery he requests, or to deny Chase summary judgment for these purported discovery "violations."

9

**Chase Is Entitled To Statutory Pre Judgment Interest of 9% Pursuant to CPLR § 5004**

The amount of pre-judgment interest to which Chase is entitled is not properly before the Court on this motion. The issue of damages to which Chase is entitled should be determined only after this Court awards summary judgment in Chase's favor. Should the Court consider the issue now, we remind the Court that the Account Agreement provides for a certain interest rate on judgments "unless state law requires a different rate." (Glickman Decl., **Ex. 22** (Account Agreement, I.11)). Without any ambiguity, CPLR § 5004 provides pre-judgment interest "*shall* be at the rate of nine percent per annum." See, e.g. Bruce Supply Corp. v. D & M Plumbing & Heating Corp., 737 N.Y.S.2d 642 (2d Dept. 2002) (rejecting the contract rate of pre-judgment in favor of the CPLR rate).

## CONCLUSION

For all the foregoing reasons and those set forth in its main brief, Chase respectfully requests that the Court grant its motion in its entirety, award summary judgment directing entry of a judgment on its complaint, dismiss the defendant's defense and counterclaims with prejudice, and grant such other relief as is just and proper.

Dated:   New York, New York
         July 20, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Barry J. Glickman
    Bruce S. Goodman
    Attorneys for Plaintiff
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400